**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM RICHARD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 17 CV 50232 |
| | ) | |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| WEXFORD HEALTH SOURCES, INC. | ) | |
| a/k/a WEXFORD HEALTH CARE | ) | Magistrate Iain Johnston |
| PROVIDERS, TIM CHAMBERLAIN, | ) | |
| M.D., AMBER ALLEN, JOHN R. | ) | |
| BALDWIN, and J.R. WHEAT, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, William Richard ("Richard"), through counsel, Langhenry, Gillen, Lundquist & Johnson, LLC, complains of the defendants, Wexford Health Sources, Inc. a/k/a Wexford Health Care Providers ("Wexford"), Tim Chamberlain, M.D. (Chamberlain"), Amber Allen ("Allen"), John R. Baldwin ("Baldwin"), and J.R. Wheat ("Wheat"), as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

**Nature of the Case**

1.      This is a prisoner's rights action brought under 42 U.S.C. § 1983 for injuries and damages sustained by Plaintiff Richard in violation of the Eighth Amendment of the United States Constitution, as a result of the deliberate indifference of the defendants to provide Richard with medical care and treatment while incarcerated, and in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Rehabilitation Act, 29 U.S.C. §794, for failure to accommodate documented disabilities.

## Parties

2.      Plaintiff Richard is a medically fragile 64-year old African-American male and a citizen of the State of Illinois. He has been incarcerated at the Dixon Correctional Center ("Dixon CC") in Dixon, Lee County, Illinois, since June 20, 2016.

3.      The Illinois Department of Corrections has excluded Richard from educational and vocational programming because he requires supplemental oxygen to perform his activities of daily life, which has in turn deprived him of the ability to earn time off of his sentence for good behavior.

4.      Defendant Wexford is a corporation headquartered in Pennsylvania and transacting business in Illinois. Wexford, pursuant to a contract with the State of Illinois, is a healthcare provider for IDOC prisons throughout the State. At all times relevant to the events at issue in this case, Wexford was responsible for the implementation, oversight, and supervision of policies and practices at Dixon CC and the IDOC generally. As an agent of the IDOC, Wexford was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including the individual Defendants and other unknown healthcare employees at Dixon.

5.      At all relevant times, Defendant Chamberlain was a physician at Dixon CC, an employee of and final policymaker for Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Dixon CC. Defendant Chamberlain is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Chamberlain was acting under color of law and within the scope of his employment.

6.      At all relevant time, Defendant Allen was the Healthcare Unit Administrator at Dixon CC, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Dixon CC. As the Healthcare Unit Administrator,

2

Defendant Allen is responsible for reviewing and investigation all medical grievances and complaints. This position allows her authority in recommending adequate medical care. Defendant Allen is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Allen was acting under color of law and within the scope of her employment with the IDOC.

7.     Defendant Baldwin is the director of the Illinois Department of Corrections. He has responsibility for IDOC's policies and procedures and the administration of all correctional facilities in the State. He is sued here in his official capacity.

8.     Defendant Wheat is currently, or was at the time of relevant events, responsible for the administration of educational programming at Dixon CC, and employed by the IDOC. This matter is brought against Defendant Wheat in her individual capacity.

## Jurisdiction and Venue

9.     Counts I through III of this action arise under the United States Constitution and the Civil Rights Act pursuant to 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

10.     Counts IV through VI of this action arise under the Americans with Disabilities Acts, 42 U.S.C. §12101, *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 ("Rehabilitation Act"), and the Fourteenth Amendment, wherein Plaintiff seeks to redress deprivations by Defendants

11.     The Court has jurisdiction in this case pursuant to 28 U.S.C. §1331 and §1343.

12.     Venue is appropriate in this judicial district under 28 U.S.C §1391(b) because Richard suffered injuries and damages in Dixon, Lee County, Illinois, which is located in this district.

3

**Factual Background**

13.     Richard was sentenced to a six-year term of incarceration which began on June 23, 2015. At that time, Richard was incarcerated at the Stateville NRC where he underwent a medical evaluation and was noted to have serious medical conditions, namely chronic obstructive pulmonary disease ("COPD"), asthma, skin cancer, and a history of coronary artery disease, including a quadruple coronary artery bypass graft.  At his Initial Classification Session, he was found to be a low escape risk, and further noted to require supplemental oxygen at all times to perform the activities of daily life.

14.     On April 11, 2016, Richard underwent a physical examination and classification examination, where he was again noted to have serious medical conditions, namely asthma and heart problems. It was also noted that he required a walker or cane to ambulate and required the use of oxygen.

15.     On June 20, 2016, Richard was transferred from the Stateville NRC to the Dixon CC, where he was again medically evaluated, this time by Dr. Bessie Dominguez. Richard advised Dr. Dominguez of his serious medical conditions, including severe coronary artery disease, and also informed Dr. Dominguez that due to his history of cancer, his treating physicians advised that he required a colonoscopy.

16.     Dr. Dominguez informed Richard that she would look into setting up medical treatment and evaluation, but never set up any subsequent medical treatment or evaluation. She also never informed Richard of any follow-up appointments, treatments, or evaluations.

17.     On September 20, 2016, Richard was evaluated by Chamberlain. Richard advised Chamberlain of his serious medical problems, including need for a colonoscopy, and his history of heart attacks. Richard also advised Chamberlain of his need for routine diagnostic imaging and

4

testing to monitor his severe coronary artery disease and serious risk of cardiac events.

18.     Chamberlain told Richard that he would look into setting up follow-up treatment, evaluations, and testing, including a colonoscopy and ultrasound. Nothing was done.

19.     On December 8, 2016, Richard was medically furloughed and transported to CGH Medical Center for a colonoscopy consultation. He was advised that he would be scheduled for a colonoscopy in the near future. Per the instructions of CGH Medical Center, the preparation of said colonoscopy was to be done on an in-patient basis at CGH.

20.     On December 11, 2016, Richard was examined again by Chamberlain, who was aware of the recommendation of the CGH physicians that the preparation for the colonoscopy was supposed to occur at CGH Medical Center.

21.     Contrary to physician instructions, on January 21, 2017, Richard's bowel preparation for his colonoscopy was performed while still he was still at Dixon CC.  Said bowel preparation was improperly performed over the course of two days, causing Richard to suffer extreme pain and discomfort, and as well as preventing from him eating until January 24, 2017, more than two days later. In addition, the bowel preparation was ineffective and resulted in Richard having to undergo repeat preparation at the hospital.

22.     Upon information and belief, Defendants Wexford, Chamberlain and Allen knew or should have known that Richard's bowel preparation could not be properly or adequately performed at Dixon CC, and further knew that said improper preparation would cause Richard to unnecessarily suffer extreme pain and discomfort. When Richard was transported to CGH Medical Center for the colonoscopy on January 24, 2017, the preparation done at Dixon CC was determined to be inadequate and he was required to undergo additional bowel preparation by the hospital staff, which not required multiple enemas that would have not been necessary had Richard been properly

5

prepped at Dixon CC, or transported to CGH Medical Center for prep as had been recommended by his treating physicians.

23.     On February 10, 2017, Richard was evaluated again by Chamberlain for his medical conditions. Richard informed Chamberlain that nothing had been done to monitor his serious health conditions, which included his severe coronary artery disease, and that he had been denied access to the diagnostic and imaging testing necessary to monitor such condition. Chamberlain told Richard had "too many health problems" and ordered him to leave his office. Chamberlain did not order any testing to monitor Richard's severe coronary disease, despite his knowledge that as a consequence of Richard's history of severe coronary disease, failure to do so would likely result in serious injury to Richard.

24.     On February 20, 2017, Richard filed a grievance against the Dixon CC alleging that the facility knew that his serious medical conditions, which included severe coronary artery disease, required routine diagnostic and imaging testing to monitor said condition. Neither Chamberlain nor Allen ever referred Richard for his necessary diagnostic and imaging testing to monitor his severe coronary artery disease, despite their knowledge that failure and/or refusal to do so put Richard at serious risk of suffering an adverse cardiac event.

25.     On July 20, 2017, having not received necessary routine diagnostic testing to monitor his serious coronary artery disease, Richard suffered an acute ischemic coronary event, requiring emergency transport to KSB Hospital in Sterling, Illinois, via ambulance, where he then underwent angioplasty and stenting of a critical lesion in the saphenous vein graft.

26.     Richard was sentenced to six years for a Class X felony, armed habitual criminal. 730 ILCS 5/5-4.5-25(j) provides that certain persons sentenced to Class X felonies are eligible for sentence credit as set forth in 730 ICLS 5/3-6-3. Accordingly, Richard is entitled to the opportunity

6

to earn sentence credit of up to 4.5 days per month of incarceration for successful completion of education and vocational programming while in custody of the IDOC.

27.     Richard attended the offered educational and vocational programming at Dixon CC for approximately three weeks, until Defendant Wheat refused to permit him to attend further classes because he required supplemental oxygen which Richard did not have. Richard is disabled due to his severe COPD and asthma and requires supplemental oxygen at all times to perform his activities of daily life, including attending educational and vocational programming offered by Dixon CC, the attendance of which would allow him to earn sentence credit. Dixon CC and IDOC could reasonably accommodate Richard by providing him with a battery-powered portable oxygen concentrator, which would permit him to attend educational and vocational programming.

28.     On August 4, 2017, Richard filed a grievance based on the refusal of Defendant Wheat to allow him attend educational and vocational classes without the use of supplemental oxygen, and the IDOC, through the Dixon Correctional Facility, for failing to reasonably accommodate him by providing a portable oxygen concentrator.

29.     The exclusion of Richard from the educational and vocational programs offered by Dixon has deprived him of the opportunity to earn sentence credit as provided for by Illinois law, offered to those inmates who attend such programs, which would result in an earlier release date for Richard from the IDOC.

30.     Richard appropriately exhausted his administrative remedies by the filing of multiple grievances, including, but not limited to, those filed on February 20, 2017; April 3, 2017; May 24, 2017; and August 4, 2017.

31.     Wexford, Chamberlain, and Allen all had access to Richard's health records when he was incarcerated and were actually aware of his serious medical conditions.

7

32.    Richard continues to suffer from serious medical conditions, and continues to be deliberately and improperly refused the medical treatment and accommodations that he requires.

33.    IDOC persists in its refusal to provide Richard with the appropriate, necessary, reasonable, and available accommodations to allow him attend educational and vocational programming including the educational coursework, the GED, and vocational opportunities, all of which would both benefit him personally and permit him to earn sentence reduction credit.

## Count I
## Violation of 42 U.S.C. §1983 – Deliberate Indifference
### (Richard v. Wexford)

1-33.    Richard repeats and realleges Common Allegations 1 through 33 above as and for paragraphs 1 through 33 of this Count I of his Second Amended Complaint, as though fully set forth herein.

34.    At all times relevant, Richard suffered from serious medical conditions, namely coronary artery disease, COPD, emphysema, asthma, cancer, gastrointestinal issues, and sleep apnea. He requires the usage of supplemental oxygen and a walker, cane and/or wheelchair for ambulation or transportation.

35.    As described more fully above, Wexford had notice of Richard's medical needs and the seriousness of those medical needs, and knew the risk of harm to Richard if he did not receive appropriate medical care. Despite that knowledge, Wexford failed to provide him with proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

36.    As a result of Wexford's unjustified and unconstitutional conduct, Richard experienced pain, suffering, emotional distress, and injury.

37.    The misconduct described in this Count was objectively unreasonable and was

undertaken intentionally, with malice, and/or with reckless indifference to Richard's rights.

38.     Alternatively, Wexford was deliberately indifferent to Richard's objectively serious medical needs, and its actions were undertaken intentionally, with malice, and/or with reckless indifference to Richard's rights.

39.     Richard's injuries were proximately caused by policies and practices of Wexford.

40.     At all times relevant to the events at issue in this case, Defendant Wexford contracted with the IDOC to provide healthcare to men housed at Dixon CC, including Richard. As the provider of healthcare services to prisoners incarcerated at Dixon CC and other IDOC facilities, Wexford was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care to prisoners in IDOC custody.

41.     Prior to the events giving rise to Plaintiff's Complaint, Defendant Wexford had notice of widespread policies and practices by healthcare and correctional employees at Dixon CC pursuant to which prisoners like Richard with serious medical needs were routinely denied medical care and access to medical care. It is common at Dixon CC to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by healthcare and correctional employees. Despite knowledge of these problematic policies and practices, Defendant Wexford did nothing to ensure that prisoners at Dixon received adequate medical care and access to medical care, thereby acting with deliberate indifference.

42.     Specifically, there exist widespread policies or practices at Dixon pursuant to which prisoners receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which: (1) healthcare personnel commonly fail to respond or respond inadequately to

9

prisoners who have requested medical attention or medication, or asked to see a doctor; (2) healthcare personnel commonly fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; (3) healthcare personnel commonly fail to perform adequate examinations of prisoners with a serious medical condition; (4) healthcare personnel commonly fail to review a prisoner's pertinent medical records before, during, or after an examination or diagnosis of the prisoner; (5) healthcare personnel with inadequate training, qualifications, and experience are charged with the responsibility of screening and evaluating prisoner complaints and requests for medical care; (6) healthcare personnel fail to provide timely healthcare to prisoners; (7) healthcare personnel fail to respond adequately or timely to diagnostic testing which reveals a serious medical need; (8) healthcare personnel fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper; and (9) inadequate levels of health care staffing are maintained.

43. These widespread policies and practices were allowed to flourish because Defendant Wexford, which directs the provision of healthcare services at Dixon CC, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Wexford violated Richard's rights by maintaining policies and practices that were the driving force behind the foregoing constitutional violations.

44. Richard's injuries were caused by Wexford and its agents including, but not limited to, the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count I.

45. As alleged herein and above, Wexford maintained a policy and practice of denying

necessary and recommended treatment to Richard. Based on this policy, Richard was irreparably harmed, as failure to provide recommended and necessary routine diagnostic testing and treatment leads to further injury and advancement of the Richard's various disease processes, including the acute ischemic coronary episode. These denials of diagnostic evaluations and treatment constitute deliberate indifference. Wexford's policies to delay and to deny care have been intentionally promulgated and executed for financial reasons in complete disregard for the medical needs of Richard, an elderly and medically-fragile inmate. The policy was not promulgated on the basis of legitimate differences in medical opinion but solely on the basis of cost considerations and in disregard of the serious medical needs of inmates.

46. Wexford, at all relevant times, as the agent of the State of Illinois, acted under color of law to deprive Richard of his constitutionally protected rights including, but not limited to, the right to be free of cruel and unusual punishment, as guaranteed by the Eighth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

47. As alleged herein and above, Wexford's failure to treat Richard constitutes a violation of Plaintiff's Eighth Amendment rights because Wexford denied and delayed treatment with deliberate indifference to Plaintiff's serious medical needs.

48. As a result of the conscious disregard of risks to Richard, and delays and/or refusals to follow instructions for Richard's necessary medical care, including the failure to allow for in-patient bowel preparation for his colonoscopy and the failure to monitor his serious coronary artery disease, Richard has required emergency and/or additional treatment which would not otherwise have been required had Wexford not acted with deliberate indifference to Richard's medical care.

49. Additionally, there is a substantial risk that Richard will suffer unnecessary and wanton infliction of pain and suffering as a result of Wexford's denial of necessary medical

treatment.

Wherefore, Richard requests he be awarded:

(1)     General damages, in an amount to be determined at trial;

(2)     Attorneys' fees, pursuant to 42 U.S.C. §1988;

(3)     Costs of suit; and

(4)     Other such relief as this Court deems just and proper.

## COUNT II
## Violation of 42 U.S.C. §1983 – Deliberate Indifference
## (Richard v. Chamberlain)

1-33.   Richard repeats and realleges Common Allegations 1 through 33 above as and for paragraphs 1 through 33 of this Count II of his Second Amended Complaint, as though fully set forth herein.

34.     At all times relevant to his involvement in this case, Defendant Chamberlain was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding medical care at Dixon CC; the training of IDOC and Wexford staff at Dixon CC on providing medical care to prisoners, and providing prisoners access to medical care; and the supervision of IDOC and Wexford staff at Dixon CC who provided medical care and were responsible for providing prisoners access to medical care.

35.     Prior to the events giving rise to Plaintiff's Complaint, Chamberlain had notice of widespread policies and practices by healthcare and correctional employees at Dixon CC pursuant to which prisoners like Richard with serious medical needs were routinely denied medical care and access to medical care. It is common at Dixon CC to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by healthcare and correctional employees. Despite

12

knowledge of these problematic policies and practices, Chamberlain did nothing to ensure that prisoners at Dixon CC received adequate medical care and access to medical care, thereby acting with deliberate indifference.

36.     Specifically, there exist widespread policies or practices at Dixon CC pursuant to which prisoners receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which: (1) healthcare personnel commonly fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (2) healthcare personnel commonly fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; (3) healthcare personnel commonly fail to perform adequate examinations of prisoners with a serious medical condition; (4) healthcare personnel commonly fail to review a prisoner's pertinent medical records before, during, or after an examination or diagnosis of the prisoner; (5) healthcare personnel with inadequate training, qualifications, and experience are charged with the responsibility of screening and evaluating prisoner complaints and requests for medical care; (6) healthcare personnel fail to provide timely healthcare to prisoners; (7) healthcare personnel fail to respond adequately or timely to diagnostic testing which reveals a serious medical need; (8) healthcare personnel fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper; and (9) inadequate levels of health care staffing are maintained.

37.     These widespread policies and practices were allowed to flourish because Chamberlain who oversaw the provision of healthcare to prisoners at Dixon CC and was responsible for ensuring that prisoners have access to medical care, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior

13

instances of similar misconduct. In this way, Chamberlain violated Richard's rights by maintaining policies and practices that were the driving force behind the foregoing constitutional violations.

38.     The above-described widespread policies and practices, so well settled as to constitute de facto policy at Dixon CC, were able to exist and thrive because Chamberlain was deliberately indifferent to the problem, thereby effectively ratifying it.

39.     At all relevant times, Richard suffered from serious medical conditions, namely coronary artery disease, COPD, emphysema, asthma, cancer, gastrointestinal issues, and sleep apnea. He required the usage of supplemental oxygen and a walker, cane and/or wheelchair for ambulation or transportation.

40.     At all times relevant, and in the particular periods that Richard was in the care of Chamberlain, Chamberlain actually knew of Richard's serious medical conditions.

41.     Despite having knowledge of Richard's serious medical conditions, Chamberlain refused and failed to take appropriate action to address Richard's serious medical conditions.

42.     The medical treatment Richard received from Chamberlain was so far afield of accepted professional standards that it was not actually based on medical judgment.

43.     As alleged herein and above, Chamberlain maintained a policy and practice of denying necessary and recommended treatment to Richard. Based on this policy, Richard was irreparably harmed, as failure to provide recommended and necessary routine diagnostic testing and treatment leads to further injury and advancement of the Richard's various disease processes. These denials of diagnostic evaluations and treatment constitute deliberate indifference. Chamberlain's policies to delay and to deny care have been intentionally promulgated and executed for financial reasons in complete disregard for the medical needs of Richard, an elderly and medically-fragile inmate. The policy was not promulgated on the basis of legitimate differences in

14

medical opinion but solely on the basis of cost considerations and in disregard of the serious medical needs of inmates.

44.     Chamberlain, at all relevant times, as the agent of the State of Illinois, acted under color of law to deprive Richard of his constitutionally protected rights including, but not limited to, the right to be free of cruel and unusual punishment, as guaranteed by the Eighth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

45.     As alleged herein and above, Chamberlain's refusal to treat Richard constitutes a violation of Plaintiff's Eighth Amendment rights because Defendants denied and delayed treatment with deliberate indifference to Plaintiff's serious medical needs.

46.     As a result of the conscious disregard of risks to Richard, and delays and/or refusals to follow instructions for Richard's necessary medical care, including failure to allow for in-patient bowel preparation for his colonoscopy, and failure to monitor his serious coronary artery disease, Richard has required emergency and/or additional treatment which would not otherwise have been required had Chamberlain not acted with deliberate indifference to Richard's care.

47.     Additionally, Richard suffered unnecessary and wanton infliction of pain and suffering as a result of Chamberlain's denial of necessary medical treatment.

Wherefore, Richard requests he be awarded:

(1)     General damages, in an amount to be determined at trial;

(2)     Attorneys' fees, pursuant to 42 U.S.C. §1988;

(3)     Costs of suit; and

(4)     Other such relief as this Court deems just and proper.

**Count III**
**Violation of 42 U.S.C. §1983 – Deliberate Indifference**
**(Richard v. Amber Allen)**

1-33.    Richard repeats and realleges Common Allegations 1 through 33 above as and for paragraphs 1 through 33 of this Count III of his Second Amended Complaint, as though fully set forth herein.

34.    At all times relevant to her involvement in this case, Defendant Allen was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding medical care at Dixon CC; the training of IDOC and Wexford staff at Dixon CC on providing medical care to prisoners, and providing prisoners access to medical care; and the supervision of IDOC and Wexford staff at Dixon CC who provided medical care and were responsible for providing prisoners access to medical care.

35.    Prior to the events giving rise to Plaintiff's Complaint, Allen had notice of widespread policies and practices by healthcare and correctional employees at Dixon CC pursuant to which prisoners like Richard with serious medical needs were routinely denied medical care and access to medical care. It is common at Dixon CC to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by healthcare and correctional employees. Despite knowledge of these problematic policies and practices, Allen did nothing to ensure that prisoners at Dixon CC received adequate medical care and access to medical care, thereby acting with deliberate indifference.

36.    Specifically, there exist widespread policies or practices at Dixon CC pursuant to which prisoners receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which: (1) healthcare personnel commonly fail to respond or respond inadequately to

prisoners who have requested medical attention or medication, or asked to see a doctor; (2) healthcare personnel commonly fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; (3) healthcare personnel commonly fail to perform adequate examinations of prisoners with a serious medical condition; (4) healthcare personnel commonly fail to review a prisoner's pertinent medical records before, during, or after an examination or diagnosis of the prisoner; (5) healthcare personnel with inadequate training, qualifications, and experience are charged with the responsibility of screening and evaluating prisoner complaints and requests for medical care; (6) healthcare personnel fail to provide timely healthcare to prisoners; (7) healthcare personnel fail to respond adequately or timely to diagnostic testing which reveals a serious medical need; (8) healthcare personnel fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper; and (9) inadequate levels of health care staffing are maintained.

37.     These widespread policies and practices were allowed to flourish because Allen, who oversaw the provision of healthcare to prisoners at Dixon CC and was responsible for ensuring that prisoners have access to medical care, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Allen violated Richard's rights by maintaining policies and practices that were the driving force behind the foregoing constitutional violations.

38.     The above-described widespread policies and practices, so well settled as to constitute de facto policy at Dixon CC, were able to exist and thrive because Allen was deliberately indifferent to the problem, thereby effectively ratifying it.

39.     At all relevant times, Richard suffered from serious medical conditions, namely

coronary artery disease, COPD, emphysema, asthma, cancer, painful eye conditions, gastrointestinal issues, and sleep apnea. He required the usage of supplemental oxygen and a walker, cane and/or wheelchair for ambulation or transportation.

40. At all times relevant, and in the particular periods that Richard was in the care of Allen, Allen actually knew of Richard's serious medical conditions.

41. Despite having knowledge of Richard's serious medical conditions, Allen refused and failed to take action to address Richard's serious medical conditions.

42. As alleged herein and above, Allen maintained a policy and practice of denying necessary and recommended treatment to Richard. Based on this policy, Richard was irreparably harmed, as failure to provide recommended and necessary routine diagnostic testing and treatment leads to further injury and advancement of the Richard's various disease processes. These denials of diagnostic evaluations and treatment constitute deliberate indifference. Allen's policies to delay and to deny care have been intentionally promulgated and executed for financial reasons in complete disregard for the medical needs of Richard, an elderly and medically-fragile inmate. The policy was not promulgated on the basis of legitimate differences in medical opinion but solely on the basis of cost considerations and in disregard of the serious medical needs of inmates.

43. Allen, at all relevant times, as the agent of the State of Illinois, acted under color of law to deprive Richard of his constitutionally protected rights including, but not limited to, the right to be free of cruel and unusual punishment, as guaranteed by the Eighth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

44. As alleged herein and above, Allen's failure to treat Richard constitutes a violation of Plaintiff's Eighth Amendment rights because Defendant denied and delayed treatment with deliberate indifference to Plaintiff's serious medical needs.

45.     In particular, Allen failed to provide Richard with proper pre-colonoscopy care as directed by CGH Medical Center physicians, as well as disregarded the directives of Richard's treating physicians prior to his current incarceration that he required routine diagnostic and imaging testing to monitor his severe coronary artery disease.

46.     As a result of the conscious disregard of risks to Richard, and delays and/or refusals to follow instructions for Richard's necessary medical care, including failure to allow for in-patient bowel preparation for his colonoscopy, and failure to monitor his serious coronary artery disease, Richard has required emergency and/or additional treatment which would not otherwise have been required had Allen not acted with deliberate indifference to Richard's care.

47.     Additionally, Richard suffered unnecessary and wanton infliction of pain and suffering as a result of Allen's denial of necessary medical treatment.

Wherefore, Richard requests he be awarded:

(1)     General damages, in an amount to be determined at trial;

(2)     Attorneys' fees, pursuant to 42 U.S.C. §1988;

(3)     Costs of suit; and

(4)     Other such relief as this Court deems just and proper.

**Count IV**
**Violation of the ADA**
**(Richard v. Baldwin)**

1-33.     Richard repeats and realleges Common Allegations 1 through 33 above as and for paragraphs 1 through 33 of this Count IV of his Second Amended Complaint, as though fully set forth herein.

34.     Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

19

programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

35.     As a state agency, the Illinois Department of Corrections is a public entity within the meaning of Title II of the ADA.

36.     Plaintiff is a qualified individual with a disability under the ADA because he is substantially limited in the major life activity of breathing.

37.     Defendant violated, and continues to violate, Title II of the ADA by excluding Plaintiff from participation in educational and vocational programming, educational courses, GED preparation and test taking, and work opportunities.

38.     Defendant violated, and continues to violate, Title II of the ADA by failing to provide Plaintiff with the reasonable accommodations, including a portable oxygen concentrator, necessary for him to equally and meaningfully access educational and vocational programming, educational courses, GED preparation and test taking, and work opportunities.

39.     The above described conduct was intentional, and Defendant acted, and continues to act, with malice and reckless indifference to Plaintiff's federally protected rights.

40.     As a result of Defendant's unlawful actions, Plaintiff has suffered injury including the deprivation of his equal rights under the law. Furthermore, for two years, and continuing to date, IDOC's conduct has prevented Plaintiff from taking advantage of the educational and vocational opportunities offered to other prisoners including that he has not been able to obtain his GED and/or other educational certificates; he has been denied vocational training that could assist him upon his release into society; he has been precluded from earning an income; and he has been prevented from earning credit for good behavior that would result in an earlier release from his prison term. This harm will continue unless and until Defendant is ordered by this Court to comply

with the ADA.

Wherefore, Richard requests he be awarded:

(1)     A declaratory judgment, under 42 U.S.C. § 12101 *et seq.*, requiring this Defendant to provide the necessary battery-powered portable oxygen concentrator, and those related services necessary to accommodate Richard to permit his participation in educational, vocational, religious and recreational programs offered at the Dixon Correctional Center;

(2)     General damages, in an amount to be determined at trial;

(3)     Attorneys' fees, pursuant to 42 U.S.C. §1988;

(4)     Costs of suit; and

(5)     Other such relief as this Court deems just and proper.

### Count V
### Violation of the Rehabilitation Act
### (Richard v. Baldwin)

1-33.    Richard repeats and realleges Common Allegations 1 through 33 above as and for paragraphs 1 through 33 of this Count V of his Second Amended Complaint, as though fully set forth herein.

34.     Section 504 of the Rehabilitation Act provides, in part, that "[]no otherwise qualified individual with a disability in the United States …shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794.

35.     The Illinois Department of Corrections is subject to the Rehabilitation Act as a State agency that receives Federal financial assistance. 29 U.S.C. §794(b); C.F.R. § 27.1.

36.     Richard is a qualified individual with a disability pursuant to the Rehabilitation Act because he is substantially limited in the major life activity of breathing.

37.     Defendant Baldwin violated, and continues to violate, the Rehabilitation Act by excluding Plaintiff from participation in educational and vocational programming, educational courses, GED preparation and test taking, and vocational opportunities.

38.     Baldwin violated, and continues to violate, the Rehabilitation Act by failing to provide Richard with the reasonable accommodations, including auxiliary aids and services, necessary for him to equally and meaningfully access educational and vocational programming, educational courses, GED preparation and test taking, and vocational opportunities.

39.     The above described conduct was intentional, and Baldwin acted, and continues to act, with malice and reckless indifference to Richard's Federally-protected rights.

40.     As a result of Baldwin's unlawful actions, Richard has suffered injury including the deprivation of his equal rights under the law. Furthermore, for two years, and continuing to date, Baldwin's conduct has prevented Richard from taking advantage of the educational and vocational opportunities offered to other prisoners including that he has not been able to obtain his GED and/or other educational certificates; he has been precluded from earning an income; and he has been prevented from earning credit for good behavior that would result in his earlier release from the IDOC. This harm will continue unless and until Defendants are ordered by this Court to comply with the Rehabilitation Act.

Wherefore, Richard requests he be awarded:

(1)     A declaratory judgment, under 42 U.S.C. § 12101 *et seq.*, requiring this Defendant to provide the necessary battery-powered portable oxygen concentrator, and those related services necessary to accommodate Richard to permit his participation in educational, vocational, religious and recreational programs offered at the Dixon Correctional Center;

(2)     General damages, in an amount to be determined at trial;

(3)     Attorneys' fees, pursuant to 42 U.S.C. §1988;

(4)     Costs of suit; and

(5)     Other such relief as this Court deems just and proper.

## Count VI
## Violation of the Fourteenth Amendment
### (Richard v. Wheat)

1-33.    Richard repeats and realleges Common Allegations 1 through 33 above as and for paragraphs 1 through 33 of this Count VI of his Second Amended Complaint, as though fully set forth herein.

34.    As described more fully above, Defendant Wheat denied Richard equal protection of the law in violation of his constitutional rights.

35.    The actions of Wheat in denying Richard educational and vocational programming without rational bases were purposeful discrimination against Richard because of his disability.

36.    The misconduct described in this Count VI was objectively unreasonable and was undertaken intentionally with willful indifference to Richard's constitutional rights.

37.    As a result of Wheat's unlawful actions, Richard has suffered injury including the deprivation of his equal rights under the law. Furthermore, for two years, and continuing to date, Wheat's conduct has prevented Richard from taking advantage of the educational and vocational opportunities offered to other prisoners including that he has not been able to earn sentence credit towards an earlier release from incarceration, obtain educational certificates; he has been denied vocational training that could assist him upon his release into society; he has been precluded from earning an income; and he has been prevented from earning credit for good behavior that would result in his earlier release from the IDOC. This harm will continue unless and until Defendants are ordered by this Court to comply with the ADA.

Wherefore, Richard requests:

23

(1) A declaratory judgment, under 42 U.S.C. § 12101 *et seq.*, requiring this defendant to accommodate Richard to permit his participation in educational, vocational, religious and recreational programs offered at the Dixon Correctional Facility;

(2) For general damages in an amount to be determined at trial;

(3) For attorneys' fees pursuant to 42 U.S.C. §12205;

(4) For costs of suit herein;

(5) Other such relief as this court deems just and proper.


**Jury Demand**

William Richard hereby demands a trial by jury on all issues so triable herein.


Respectfully submitted,

**WILLIAM RICHARD**

By: s/ J. Daniel Porter
    One of his attorneys


Attorneys for Plaintiff
J. Daniel Porter (ARDC No. 6191276)
Stacy K. Shelly (ARDC No. 6279783)
**Langhenry, Gillen, Lundquist & Johnson, LLC**
6785 Weaver Road, Suite 2E
Rockford, Illinois 61114
Tel: (815) 636-1800
Fax: (815) 636-2860
dporter@lglfirm.com
sshelly@lglfirm.com

24

## CERTIFICATE OF SERVICE - ELECTRONIC

The undersigned certifies that on February 20, 2018, the Amended Complaint was filed with the Court pursuant to the General Order on Electronic Case Filing as to filing users, and that I shall comply with Local Rule 5.5 as to any party who is not a filing user or represented by a filing user.

s/ J. Daniel Porter
J. Daniel Porter
dporter@lglfirm.com
ARDC No. 6191276